Peter GRABER, Wanda L. Graber, Eric P. Graber, and Lori L. Graber, Plaintiffs,

v.

IOWA DISTRICT COURT FOR WASHINGTON COUNTY, Defendant,

The Southeast Iowa Production Credit Association N/K/A the Production Credit Association of the Midlands, Intervenor.

No. 86–322.

Supreme Court of Iowa.

July 22, 1987.

Marilyn S. Scheer and Steven L. Nelson, of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for intervenor.

Peter C. Riley and Mary K. Hoefer, Cedar Rapids, for plaintiffs.

Considered by REYNOLDSON, C.J., and McGIVERIN, WOLLE LAVORATO and NEUMAN, JJ.

NEUMAN, Justice.

In this original certiorari action brought in accordance with Iowa Rule of Civil Procedure 306, the plaintiffs attack the legality of an order nunc pro tunc entered by the district court in a mortgage foreclosure action. The issue is whether the district court had jurisdiction to amend its final judgment after the time for posttrial motions and appeal had expired. We conclude that it did not and sustain the writ.

### I. *Background Facts and Proceedings.*

The mortgage foreclosure action which is the primary focus of these proceedings was just one of three suits pending between plaintiffs Peter, Wanda, Eric and Lori Gra-

ber (Grabers) and intervenor, The Production Credit Association of the Midlands (PCA). One action was a tort claim by Grabers against the PCA for an alleged breach of its fiduciary duty towards the Grabers in connection with the financing of Grabers' farming operation. The other was a replevin action filed by PCA against the Grabers to recover personal property pledged as collateral for unpaid loans. In both the replevin and foreclosure actions, Grabers raised the defense of equitable estoppel, asserting that the PCA falsely promised renewal of Grabers' loans and that Grabers' reliance on those promises led to their substantial financial loss.

All three cases were consolidated for trial. The replevin and tort actions were tried to a jury and the foreclosure action was tried to the court. The jury returned special verdicts in the replevin action finding Grabers had established that PCA was equitably estopped from enforcing its promissory notes and security agreements and that Grabers were entitled to damages of $235,770 for the wrongful detention and sale of property seized. In the tort action, the jury awarded Grabers $1,279,666 as compensation for PCA's breach of fiduciary duty.

In the tort and replevin actions, PCA timely moved for judgment notwithstanding the verdict and for new trial. PCA challenged the verdict in the tort action as excessive and duplicative inasmuch as Grabers' loss appeared to be calculated by adding Grabers' alleged net worth in 1981 to the amount of Grabers' indebtedness to the PCA. Further, PCA claimed that the jury's finding of equitable estoppel as a defense to the replevin action was not supported by substantial evidence.

Grabers resisted the motion on all grounds. They did, however, acknowledge that the damages would be duplicative if the court, in the foreclosure action, adopted the jury's finding on equitable estoppel and both findings were upheld on appeal. Grabers suggested a remittitur in the tort action in the amount of PCA's debt subject to that condition.

On January 2, 1986, the district court declined to direct judgment in favor of PCA in the tort action, ruling the evidence supported the jury's finding of breach of fiduciary relationship. Likewise, the court specifically found the jury's special verdict on the issue of equitable estoppel supported by the evidence and therefore upheld the jury's award in the replevin action. The court did, however, sustain PCA's motion for new trial in the tort action, finding the damages awarded by the jury excessive, duplicative and influenced by passion, sympathy or prejudice.

On the same day, the district court entered judgment for the Grabers in the foreclosure action, finding that the notes and mortgages were in default but adopting the jury's finding that the Grabers established by "clear, satisfactory and convincing evidence the defense of equitable estoppel." The court therefore ordered PCA "estopped from any further proceedings in attempting to foreclose the Graber mortgages" and taxed the cost of the action to the PCA. Neither party appealed the court's judgment in the foreclosure action.

On January 10, 1986, PCA filed a motion for enlarged findings and conclusions in the tort action. The sole relief requested was a determination of the scope of the new trial, the issue being whether or not both liability and damages would be retried or only the issue of damages. No mention was made in this motion of any objection to the court's judgment for Grabers in the foreclosure action.

On January 28, 1986, twenty-six days after the court ruled in Grabers' favor in the foreclosure action, PCA arranged a telephone conference between the district court and counsel to inquire whether the court's finding of equitable estoppel in the foreclosure action prevented PCA from enforcing its promissory notes. The parties dispute whether Grabers' counsel acquiesced in this irregular procedure and actively resisted PCA's claim on the merits, or whether counsel merely made himself available for the conference in order to preserve Grabers' interest in any matter raised by PCA. Because PCA's request

for further hearing was not written nor was the telephone conference reported, this court has the dubious task of recreating the subsequent action of the parties and the court by reference to competing letters and affidavits.

The parties do agree that the district judge, by telephone messages on January 31, 1986, informed both counsel that he intended to alter the foreclosure judgment in favor of PCA on the notes. By letter of February 13, 1986, prior to entry of the ruling, counsel for Grabers informed the district court that they contested its jurisdiction to so alter the judgment. In response, PCA filed an "amendment to motion for enlarged findings and conclusions of law" in which it alleged that the court failed to address the issue of Grabers' outstanding indebtedness on the PCA notes in its foreclosure ruling. This document, filed forty-four days after final ruling in the action, was the first time PCA attempted in writing to obtain an amendment of the foreclosure judgment.[1]

On February 20, 1986, the district court entered a written order nunc pro tunc altering the judgment. Because the rationale embodied in its ruling is material to our consideration of plaintiffs' challenge, we set out the pertinent parts here:

On January 2, 1986, this court entered judgment in this matter estopping the PCA from foreclosing the Grabers' mortgages....

This court further made a finding at paragraph 4 that the mortgages *and* notes were delinquent and the Grabers were in default.

This court further stated in paragraphs 5 and 6 of the Findings of Fact, that the Grabers had established their defense of equitable estoppel and PCA could not foreclose its *mortgages*.

This court made no finding that PCA could not obtain judgment on the note because of the delinquent status. This court should have entered judgment in favor of PCA for the amount due under

the note as of the date of trial with accruing interest at the highest legal rate thereafter. The amounts due at the time of trial was $479,212.36 principal plus $149,570.73 accrued interest.

This omission by the court was brought up through a telephone conference with the attorneys in response to a request for clarification by PCA's counsel concerning judgment on the note.

(Emphasis in original.)

It is this nunc pro tunc order which forms the basis of this certiorari action.

## II. *Intervenor's Motion to Dismiss.*

Plaintiffs claim that the district court acted illegally and without jurisdiction when it entered its order of February 20, asserting the ruling was neither proper under Iowa Rule of Civil Procedure 179(b) nor as an order nunc pro tunc. Intervenor PCA resists plaintiffs' challenge to the order and further moves this court to dismiss the petition for writ of certiorari based on the doctrines of judicial estoppel and appellate waiver. We turn first to intervenor's motion to dismiss which merits only our brief attention.

### A. Judicial estoppel.

■ PCA argues that the doctrine of judicial estoppel bars the Grabers from pursuing this certiorari action. The doctrine, which prohibits a party who successfully and unequivocally asserts a position in one proceeding from asserting an inconsistent position in a subsequent proceeding, was recently discussed by this court in *Vennerberg Farms, Inc. v. IGF Ins. Co.*, 405 N.W.2d 810, 814 (Iowa 1987). There, as here, the doctrine has no application. PCA claims that Grabers' reliance in this action on the unenforceability of the promissory notes is inconsistent with the position Grabers took in retrying the breach of fiduciary duty claim. At the retrial, Grabers introduced evidence showing their debt to PCA based on the nunc pro tunc order it now challenges. PCA argues this

---

1. The original motion for enlarged findings and conclusions was captioned only in the tort action, No. CL 1408, and the replevin action, No.

CL 1556. The purported amendment was captioned in those actions *and* the foreclosure action, No. CE 1557.

amounts to an admission of the debt, thus barring Grabers from claiming in this action that the debt does not exist. According to PCA, if Grabers cannot challenge the existence of the debt they cannot challenge the order nunc pro tunc.

As we said in *Vennerberg*, a fundamental feature of the doctrine of judicial estoppel is the successful assertion of the inconsistent position in a prior action. Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent, misleading results exists. Furthermore, an intentional attempt to mislead the court with the inconsistency must be shown. *Id.* While Grabers may have gained an advantage upon retrial because the judgment they now challenge served to enhance their damage claim, PCA's characterization of this strategy as "playing fast and loose with the courts" is untenable. To the contrary, Grabers sought a remittitur on the jury's first verdict to the extent the award was duplicative and moved for advance submission of this action in order to avoid the conflict inherent in the position on retrial. Grabers' disagreement with the district court's nunc pro tunc order was irrelevant to the retrial of the tort action, but the resulting judgment—over which Grabers had no control—was very relevant to its claimed reduction in net worth.

In summary, we can find nothing in this record to support PCA's bare allegation that Grabers have voluntarily or intentionally put forth inconsistent positions. PCA's motion to dismiss grounded on such an assertion is without merit.

### B. Appellate waiver.

Similarly, PCA characterizes Grabers' use of the nunc pro tunc judgment in the tort action retrial as a voluntary acceptance by Grabers of the benefit of the judgment. This, according to PCA, is contrary to the doctrine of appellate waiver which provides that a person who knowingly and voluntarily accepts satisfaction of a judgment generally cannot challenge the judgment on appeal. *Wederath v. Brant*, 319 N.W.2d 306, 310 (Iowa 1982). Without be-

laboring the extensive authority we cited in *Wederath* holding the doctrine inapplicable in a variety of circumstances akin to this one, *see id.* at 310–11, we point out that it was *PCA, not Grabers*, who received a benefit by the nunc pro tunc order and any "benefit" reaped by Grabers was not only incidental but resisted by them consistently in this court and below.

Finding no merit in either of PCA's claimed grounds for dismissal, we overrule the motion and turn to the merits of Grabers' action against the district court.

### III. *Legality of the Nunc Pro Tunc Order.*

In *Robco Transp. Inc. v. Ritter*, 356 N.W.2d 497, 499–501 (Iowa 1984) this court reiterated the rule that in the absence of a timely motion to enlarge under rule 179(b), a trial court may not alter or undo a final judgment except in cases where the court corrects its ruling nunc pro tunc to conform to what was actually intended by the court when the judgment was rendered. *See also Snyder v. Allamakee County*, 402 N.W.2d 416, 419 (Iowa 1987). Because the order nunc pro tunc challenged in this case was prompted by a motion for enlarged findings under Iowa Rule of Civil Procedure 179(b), we look first to the propriety of the motion as a vehicle for amending the final judgment and, failing that, to the validity of the nunc pro tunc order standing alone.

### A. The rule 179(b) motion.

It is undisputed that twenty-six days passed before PCA sought to have the court supplement its ruling in the foreclosure action in order to clarify the issue of Grabers' indebtedness to the PCA. This was an oral request, not reduced to writing until eighteen days later (forty-four days after judgment) when PCA attempted to amend its original motion for enlarged findings filed in the tort and replevin actions. Grabers assert that PCA's attempt, orally or in writing, to move under rule 179(b) was untimely and cannot "relate back" to a pending rule 179(b) motion in the other actions. We agree.

Motions under Iowa Rule of Civil Procedure 179(b) must be filed within the time allowed for filing a motion for new trial, generally "within ten days after the verdict, report or decision is filed." Iowa R.Civ.P. 179(b), 247; *Snyder v. Allamakee County*, 402 N.W.2d at 419. We have repeatedly held that the district court is without jurisdiction to address the merits of a rule 179(b) motion filed beyond the ten day limit of Iowa Rule of Civil Procedure 247. *Snyder*, 402 N.W.2d at 419; *Doland v. Boone County*, 376 N.W.2d 870, 875–76 (Iowa 1985); *Robco*, 356 N.W.2d at 499 n. 2; *Lutz v. Iowa Swine Exports Corp.*, 300 N.W.2d 109, 112 (Iowa 1981).

PCA claims, however, that its motion related back to the initial, timely rule 179(b) motion. This motion, it will be remembered, related only to the tort action, seeking clarification of the scope of the new trial ordered by the court in its posttrial judgment rulings. The timely motion did not include the foreclosure action in its caption, and made no reference to any flaws in the foreclosure judgment though the error now claimed clearly existed, if at all, at that time.

■ We have held that a late-filed amendment to a posttrial motion cannot be considered unless the ground asserted is germaine to a ground in the original timely motion. *Julian v. City of Cedar Rapids*, 271 N.W.2d 707, 708 (Iowa 1978) (citing *In Re Estate of Dvorak*, 213 Iowa 250, 236 N.W. 66 (1931)). We are satisfied that PCA's amended rule 179(b) motion, filed forty-four days after the decision to which it logically relates, cannot reasonably be considered germaine to grounds asserted thirty-three days earlier in a separate cause of action.

Moreover, we reject PCA's fallback argument that Grabers waived any objection to the timeliness of PCA's oral motion because Grabers' counsel participated in the hearing at which it was raised. Apart from the lack of factual record to support such an assertion, the argument fails because subject matter jurisdiction cannot be conferred by consent. *City of Des Moines v. Des Moines Police Bargaining Unit*

*Ass'n*, 360 N.W.2d 729, 730 (Iowa 1985); *Cunningham v. Iowa Dep't of Job Serv.*, 319 N.W.2d 202, 204 (Iowa 1982); *Qualley v. Chrysler Credit Corp.*, 261 N.W.2d 466, 468 (Iowa 1978).

Thus we conclude that the court was without jurisdiction to modify its judgment in response to PCA's late-filed rule 179(b) motion and we turn to the question of whether the court otherwise acted legally when it modified the judgment nunc pro tunc.

**B. The nunc pro tunc order.**

Both parties agree that a nunc pro tunc order can be used only to correct obvious errors or to make an order conform to the judge's original intent. *Robco*, 356 N.W.2d at 500; *McVay v. Kenneth E. Montz Implement Co.*, 287 N.W.2d 149, 150–51 (Iowa 1980). Grabers focus on our statement in *Headley v. Headley*, 172 N.W.2d 104, 108 (Iowa 1969), quoted in *McVay*, where we said that such an order "is not for the purpose of correcting judicial thinking, a judicial conclusion or mistake of law." *McVay*, 287 N.W.2d at 150. Contrary to PCA's claim that the order was entered for the purpose of correcting an evident mistake, Grabers argue that the order reflects a change in the judge's thinking at odds with the court's instructions to the jury in the replevin and tort actions and the intent of the court as shown by prior rulings.

We agree that if the court intended to correct "an error of fact or law in arriving at its judgment, the appropriate remedy would not be by way of a nunc pro tunc order but by way of other available procedures such as a motion under rule 179(b) ... or a motion for new trial." *McVay*, 287 N.W.2d at 151. Acknowledging that intent of the trial judge is crucial to the determination of whether a nunc pro tunc order is appropriate to "correct" a record, we recited in *McVay* a number of factors tending to support or defeat a finding of evident mistake. *Id.* Applying those factors—the words used by the court in its order, the nature of the alleged error, whether the matter had been previously called to the court's attention and the

length of time passing before the mistake's "discovery"—we turn to the facts before us.

■ The conduct of the trial judge as well as counsel for both parties persuade us that the court intended the doctrine of equitable estoppel to apply to both the notes and the mortgage. First, PCA's petition for foreclosure requested judgment on the notes and the foreclosure of mortgages and Grabers posed their defense of equitable estoppel to both remedies. Ordinarily, equitable estoppel resulting from lending behavior precludes all debt enforcement, whether against the secured property or otherwise. *See Manson State Bank v. Diamond*, 227 N.W.2d 195, 204 (Iowa 1975). The court's findings of fact, conclusions of law and judgment did not purport to be a partial judgment, leaving for another day the court's ruling on the notes. The court found the notes to be in default but applied Grabers' defense to PCA's elected remedy, foreclosure of the mortgages. As we held in *Brenton State Bank of Jefferson v. Tiffany*, 400 N.W.2d 576, 578 (Iowa 1987), the doctrine of merger precludes further relief by way of personal judgment when the judgment of foreclosure is given for less than the full relief requested.

Secondly, the court's ruling characterized the case as identical to the tort and replevin actions as far as parties, facts and circumstances were concerned, and adopted the finding of the jury that Grabers established "by clear, satisfactory and convincing evidence the defense of equitable estoppel." In the replevin action, the jury was specifically instructed that if Grabers established their defense of equitable estoppel, the PCA would be unable to enforce either its notes or security agreements. In its posttrial motions, PCA challenged the sufficiency of the evidence but not the legal theory upon which the jury had been instructed. It merely claimed that there was insufficient evidence to support the jury's finding that "PCA was equitably estopped from enforcing its notes."

Moreover, the district court granted PCA a new trial in the tort action because the unenforceability of the notes made the jury's award of damages based on that outstanding liability duplicative. If the court did not intend for equitable estoppel to bar PCA's collection of the notes, it would not have ruled that the damages were duplicative.

Finally, it is apparent that the judgment rendered in the foreclosure action on January 2, 1986, would still be standing, subject to a timely appeal, had the PCA not orally "inquired" of the court twenty-six days later about the legal effect of the judgment on its notes. This turn of events strongly suggests that the first judgment did in fact conform to the court's original intent and that PCA's subsequent action caused the court to "rethink" its position, right or wrong, long after the time for doing so had passed. In other words, there is nothing in the court's nunc pro tunc order or the record of these proceedings to justify the dramatic reversal of the court's position "only to correct an evident mistake." *McVay*, 287 N.W.2d at 151; Iowa Code § 602.6203(4) (1985).

## IV. *Conclusion.*

In summary we conclude that the district court was without jurisdiction to rule on PCA's untimely rule 179(b) motion and further was without legal authority to alter the final judgment in the mortgage foreclosure proceedings by way of an order nunc pro tunc. Accordingly, we sustain plaintiffs' petition for writ of certiorari and set aside the order nunc pro tunc.

WRIT SUSTAINED.