# IN THE COURT OF APPEALS OF IOWA

No. 18-1027
Filed November 6, 2019

IN RE THE MARRIAGE OF MATTHEW T. PONTIER
AND JESSICA L. PONTIER

Upon the Petition of
MATTHEW T. PONTIER,
     Petitioner-Appellant,

And Concerning
JESSICA L. PONTIER,
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Warren County, Richard B. Clogg,

Judge.


     Matthew Pontier appeals several provisions of the decree dissolving his

marriage to Jessica Pontier. **AFFIRMED AS MODIFIED AND REMANDED.**



     Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

     David Brick of Brick Gentry, P.C., West Des Moines, for appellee.



     Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Matthew and Jessica Pontier divorced after thirteen years of marriage.  On appeal, Matt challenges the following portions of the dissolution decree: (1) the spousal support provision; (2) the parenting schedule associated with the court's award of joint physical care of their three children; (3) a child support award of $350 per month; and (4) a provision requiring him to pay Jessica's portion of a custody-evaluation fee.

## I.      *Spousal Support*

The district court ordered Matt to pay Jessica rehabilitative alimony of $1000 per month for thirty-six months.  The court reasoned that this was "an almost thirteen year marriage"; Matt earned far more than he disclosed; Jessica was "out of the workforce" for six years and "had only been working six months when this divorce was initiated by" Matt; Jessica was "doing everything she" could "to make as much money as she" could "and still be a mom"; Jessica lacked savings and would have to pay for her own health insurance after the divorce was finalized; and Jessica would have to pay more for housing following the divorce.  The court concluded this was "not an appropriate case for traditional alimony" but found the case was "particularly suited for rehabilitative alimony."

"Self-sufficiency is the primary goal of rehabilitative alimony."  *In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998).  Matt argues Jessica was self-sufficient without an award of spousal support.  On our de novo review, we disagree.

Although Jessica was relatively young—just thirty-eight at the time of trial— she did not earn significant wages for several years during the marriage.  While

she had a four-year college degree and experience with a technology company, her full-time wages before she transitioned to being "a stay-at-home mom," were only "around 30[,000]." By agreement with Matt, she cared for their twins and a third child almost full-time, working "early mornings and a couple evening[s]" at a local fitness center. Her wages from that employment were less than $3200 annually. *See In re Marriage of Martin*, No. 14-0568, 2015 WL 576065, at *7 (Iowa Ct. App. Feb. 11, 2015) ("Although Dawn has a four-year degree, she has not pursued a career in the area of visual arts. Instead, she spent more than half of the marriage staying home to raise the couple's children."). At the time of trial, Jessica earned $45,691.

Matt, in contrast, had peak earnings of more than $200,000. He testified to earning far less in the years preceding trial, but the district court called his testimony into question. After noting he worked for his father's company, the court stated,

> Despite the fact that he works for his family, his income has somehow gone down over $100,000 in five years. Despite the fact that his income appears to be dropping precipitously, he testified that he hasn't discussed the issue with his boss and father. He testified that he hasn't discussed the issue with his brother, whom he works with. He testified that he has no idea what his brother makes and they have never talked about it. . . . The Court does not find this testimony credible.

The court averaged Matt's income over five years, exclusive of his peak earning year, and adopted an annual income figure of $114,202 in lieu of an actual income figure of $75,000. The court's findings concerning Matt's income are fully supported by the record. The earnings disparity together with Jessica's need to re-establish herself in the workforce justified the award of rehabilitative alimony.

*See In re Marriage of David*, No. 06-0239, 2006 WL 3613805, at *4 (Iowa Ct. App. Dec. 13, 2006) ("We, like the district court, find Tara needs financial support from Tim to make the transition from newly divorced person to self-sufficiency.").

The court's equal property division does not alter our conclusion. Matt received the home in which the parties lived during the marriage. Jessica received an equalizing payment for her share of the equity in the home, together with other assets, including retirement accounts. But the property settlement did not seriously alleviate the consequences of Jessica's limited work history for almost half the marriage. Jessica lost wages and associated social security credits, as well as opportunities for advancement in her chosen field. She had no savings for a rainy day. A limited spousal support award was necessary to move her toward self-sufficiency.

Nor are we persuaded that Jessica inflated her expenses. Although her monthly health insurance expense was not $565.87 as she stated in her affidavit of financial status but was $125.44, Jessica testified her monthly housing expense listed on the same affidavit was understated by at least $400. Her expenses supported a rehabilitative award of $1000 per month.

Finally, we are unpersuaded by Matt's argument that he lacked an ability to pay spousal support. If he were earning to his capacity, there is simply no question he could pay $1000 per month in spousal support for thirty-six months to facilitate Jessica's move to self-sufficiency.

## II.    *Parenting Schedule*

The district court ordered the parents to share care pursuant to the following schedule:

> a. [Matt] shall have the children from 8:00 a.m. Monday to 8:00 a.m. on Wednesday when he shall return the children to daycare.
> b. [Jessica] shall have the children from 8:00 a.m. Wednesday until 8:00 a.m. on Friday when she shall return the children to daycare or school (or the other party directly, if applicable).[1]

On appeal, Matt contends the schedule "is not in the children's best interests because it prevents Matt from taking the children to religious classes on Wednesday nights, when Jessica showed no interest in taking the children to religious classes on Wednesday."

Our de novo review of the record reveals the following facts. Matt testified he had physical care of the children on Mondays, Tuesdays, and every other weekend and Jessica had the children on Wednesdays, Thursdays, and alternating weekends.[2] He asked "to switch so that Jessica would have Monday and Tuesday and [he] would have Wednesday and Thursday," to "make sure" the children went to religious education on Wednesdays. When asked if the children regularly attended the Wednesday classes under the existing arrangement, Matt responded, "I believe so, but I think they missed a couple times." Nonetheless, he expressed concern that Jessica might not take the children to the classes in the future.

---

[1] In posttrial rulings following the district court's decision to grant Jessica's motion to reopen the record, the parenting schedule was modified, then un-modified via a nunc pro tunc order. Matt challenges the district court's decision to reopen the record and its entry of a nunc pro tunc order. Reopening of the record lay within the court's discretion, and we discern no abuse of discretion. *See* Iowa R. Civ. P. 1.920; *Neimann v. Butterfield*, 551 N.W.2d 652, 655 (Iowa Ct. App. 1996). The nunc pro tunc order simply clarified that the parenting schedule contained in the original decree controlled. We discern no error in the court's use of a nunc pro tunc order for that purpose. *See Graber v. Iowa Dist. Ct.*, 410 N.W.2d 224, 229 (Iowa 1987) ("[A] nunc pro tunc order can be used only to correct obvious errors or to make an order conform to the judge's original intent.").

[2] The parents signed a stipulation containing the parenting schedule Matt desired, but the temporary order under which the parents had operated for close to a year reversed the weekly parenting times.

There is scant evidence to support Matt's supposition. In addition to the two missed classes, Matt merely cited one of the children's statements that Jessica complained about infringement of the classes on her parenting time. Jessica stipulated to working with Matt on religious issues, and there is no indication she thwarted the children's attendance.

The district court weighed the evidence and credited Jessica's testimony. We give weight to the court's credibility finding and, on our de novo review, we agree with the court's ruling.

## III. *Child Support*

Matt contends "the district court incorrectly calculated child support." He takes issue with the court's determination of his income and, specifically, the decision to use his earning capacity rather than his actual earnings.

Iowa Court Rule 9.11(4) allows a court to impute income to a party who "is voluntarily unemployed or underemployed." As discussed above, the court essentially found Matt was underemployed. The court cited precedent authorizing an adjustment to the child support amount "to provide for the needs of the child[ren] and to do justice between the parties." *See* Iowa Ct. R. 9.11(4) ("The court shall not use earning capacity rather than actual earnings or otherwise impute income unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties."). The record amply supports the district court's use of earning capacity rather than actual income. We decline to modify the district court's calculation of Matt's annual income for child support purposes.

There is a second issue, however. Matt notes that the decree "failed to state how alimony affects the parties' respective incomes for child support purposes." He asks us to "remand to recalculate child support considering that alimony award."

Iowa Court Rule 9.5(1)(a)(1) states: "If traditional or rehabilitative spousal support is to be paid in the pending matter, it will be determined first and added to the payee's income and deducted from the payor's income before child support is calculated." The district court awarded rehabilitative spousal support but failed to include the sum in Jessica's income or deduct it from Matt's income before calculating child support. Because we have affirmed the spousal support award, we modify that portion of the dissolution decree ordering child support of $350 and remand for recalculation of child support with the spousal support added and deducted as prescribed by Rule 9.5(1)(a)(1).

## IV. Cost of Custody Evaluation

Matt contends the district court "abused its discretion in making [him] pay Jessica's $5000 portion of the custody evaluation as court costs." We disagree.

Iowa Code section 598.12B(3) (2017) authorizes the taxation of fees and disbursements associated with a "child custody investigator or child and family reporter . . . against the party responsible for court costs." *See also In re Marriage of Peterson-Bayer*, No. 08-1695, 2009 WL 1492717, at *5 (Iowa Ct. App. May 29, 2009) (stating custody evaluator's fee "should have been fixed as court costs"). Matt was taxed with court costs, including "$5000 to reimburse [Jessica] for her portion of the custody evaluator fee." Given his higher income, we discern no abuse of discretion in the allocation of the evaluator fee.

*V.*     ***Appellate Attorney Fees***

Jessica seeks an award of appellate attorney fees.  *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  Given the earnings disparity and the fact that Jessica prevailed on the spousal support, parenting schedule, and custody-evaluation fee issues, we conclude an award is appropriate.  We remand for a determination of the appropriate amount of appellate attorney fees.

**AFFIRMED AS MODIFIED AND REMANDED.**