Elmer Joseph SCHETTLER and
Schettler Seed Farms, Inc.,
Plaintiffs,

v.

IOWA DISTRICT COURT FOR
CARROLL COUNTY,
Defendant.

Jane Mary SCHETTLER, Appellee,

v.

Elmer Joseph SCHETTLER and
Schettler Seed Farms, Inc.,
Appellants,

and

James R. Van Dyke, Ronald W. Muhlbauer, and Olsen, Muhlbauer, Mahoney & Co., Defendants.

No. 92–1596.

Supreme Court of Iowa.

Dec. 22, 1993.

Kay E. Dull, Sioux City, for plaintiffs.

Robert G. Allbee and David Swinton of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for defendant.

Considered by LAVORATO, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

LAVORATO, Judge.

Elmer Joseph Schettler and Schettler Seed Farms, Inc. (SSFI), "appeal" from a district court order denying their motion for sanctions against Thomas W. Polking, attorney for Elmer's former spouse, Jane Mary Schettler. Elmer casts himself as the disgruntled victim of successive and allegedly inconsistent postdivorce actions by Jane. He believes the action for fraud underpinning this "appeal" was nothing more than a furtive collateral attack by Polking on the property settlement in the dissolution of marriage decree.

Polking was not a party to the underlying fraud action. The challenge to the district court's refusal to sanction Polking should not, therefore, be deemed an appeal. *See Weigel v. Weigel*, 467 N.W.2d 277, 278 (Iowa 1991). We treat the "appeal" as a petition for a writ of certiorari and grant the writ. *See id.* The arguments of Jane who appears as "appellee" in the briefs will be considered on behalf of the district court, the defendant in the certiorari action.

The fraud action was dismissed on all defendants' summary judgment motions. Shortly before Jane filed a notice of appeal from the dismissal ruling, Elmer and SSFI filed a motion for sanctions against Polking.

During the pendency of the appeal the district court—acting on its own—ruled it would hold the motion for sanctions in abeyance until the appeal was decided. After the appeal was decided, the district court revisited the issue and reluctantly denied the motion for sanctions.

Elmer and SSFI raise several issues surrounding the district court's denial of the motion for sanctions. They argue that an attorney should have a continuing duty to obey the dictates of Iowa Rule of Civil Procedure 80(a), even though the attorney (1) does not sign all documents filed in the case, and (2) steps down as lead counsel but remains of counsel in the case.

And, they believe that, under the standard they propose, the district court abused its discretion when it failed to order sanctions against Polking and concluded SSFI had no standing regarding the motion for sanctions.

Because we find that the district court did not abuse its discretion in denying the motion for sanctions, we annul the writ of certiorari.

### I. *Background Facts.*

Jane and Elmer were divorced in April 1984. A property settlement reached between the two was incorporated in the dissolution of marriage decree. This property settlement was based primarily on the value of SSFI, a family-owned corporation and seed business in which Jane had been a shareholder.

Jane's anticipated departure for Arizona in 1988 raised visitation issues regarding the Schettler children. In February 1988 she retained Polking to deal with these matters. An attorney other than Polking had represented Jane in the original dissolution of marriage proceeding.

After talking with Jane, Polking surmised that Elmer had, at the time of the dissolution of marriage proceeding, substantially undervalued SSFI. Polking told Jane of his suspicion and advised her that she should have received a more generous property settlement.

In March, on Jane's behalf, Polking filed an action to modify her dissolution of marriage decree. The modification action alleged a material and substantial change in circumstances since the decree as to the amount of child support and alimony necessary for the support of the children and Jane.

During the discovery process in the modification action, Polking obtained financial statements that he thought confirmed his suspicion. All of the statements were signed by Elmer; none were signed by Jane. Jane told Polking she had never seen the financial statements. Essentially the financial statements showed that Elmer's financial condition was substantially better than what he had represented it to be at the time of the dissolution of marriage proceeding.

With this revelation of Elmer's brighter financial picture, Polking felt he had a sufficient basis for filing a shareholder fraud action on Jane's behalf.

Polking filed such an action—the proceeding out of which this certiorari action arises—against Elmer, his accountant, and Jane's dissolution of marriage attorney. The petition alleged claims against (1) Elmer for fraud and breach of fiduciary duty over his alleged misrepresentation of the value of SSFI stock held by Jane before the dissolution of marriage decree, (2) Elmer's accountant for complicity in the fraud, and (3) Jane's dissolution of marriage attorney for complicity in the fraud.

Judge Mark Cady tried the modification action in March 1989. Judge Cady filed his ruling, awarding Jane an increase in child support but not in alimony. The judge made a finding that SSFI had "dramatically increased in value" following the dissolution of marriage. In February 1990 the court of appeals affirmed Judge Cady's ruling following Jane's appeal of it.

On the same day of Judge Cady's ruling in the modification action, Gary Ordway entered his appearance as lead counsel for Jane in the fraud case. According to Polking, he arranged for the change in counsel because he was "motivated by [his] concern that zealous representation of Jane in [the fraud] action might require assertion of claims against [his] cousin, who had formerly represented both Jane and SSFI." Polking maintained he remained of counsel in the case "because of his professional relationship with Jane."

The case proceeded toward trial. In February 1990 Ordway filed an amended petition adding SSFI as a defendant. Polking did not sign this document.

Elmer's accountant and his firm, and Elmer and SSFI, filed separate motions for summary judgment followed by separate motions for adjudication of law points. After a consolidated hearing, the district court sustained these motions on August 3, 1990.

## II. *Background Proceedings Regarding the Motion for Sanctions.*

One month following the district court's rulings on the motions for summary judgment and adjudication of law points, Elmer and SSFI filed the motion for sanctions against Polking. About a week later Jane appealed from the district court's adverse summary judgment ruling.

The district court on its own initiative entered an order, shortly after Jane appealed, holding in abeyance a final ruling on the motion for sanctions until Jane's appeal was decided. Our court of appeals affirmed the district court ruling in December 1991. Our court denied Jane's application for further review, and procedendo issued on March 4, 1992.

The motion for sanctions lay dormant until April 28, 1992. On that date Elmer and SSFI filed a "motion to amend pleadings," seeking additional sanctions against Ordway and his firm.

Polking resisted the motion to amend on jurisdictional grounds. Following a hearing, the district court denied the motion to amend. The court denied the motion because it sought to add a new party without notice and asserted substantially additional grounds. But the court also concluded it still had jurisdiction to consider the original motion for sanctions.

Following a hearing, the district court denied the motion for sanctions. It is from this ruling that Elmer and SSFI "appeal."

## III. *Rule 80(a) Jurisdiction.*

■ Jane contends that, once the procedendo was issued in the underlying fraud action, the district court lacked jurisdiction to rule on the motion for sanctions. She believes that a motion for sanctions is not separate from an appeal on the merits. Rather, she says, the motion is "inextricably entwined" with a determination of the merits in the underlying action.

In contrast, Elmer and SSFI argue that the motion concerns an issue collateral to the subject matter of the underlying fraud action. They think, for that reason, the district court retained jurisdiction to rule on the motion.

■ It is true that, once a notice of appeal is filed, the district court loses jurisdiction. But there is an exception. The district court "retains jurisdiction to proceed as to issues collateral to and not affecting the subject

matter of the appeal." *In re Estate of Tollefsrud*, 275 N.W.2d 412, 418 (Iowa 1979).

Although the precise issue was not before the court, we think our discussion in a recent case makes it clear that a motion for sanctions is a collateral matter. *See Darrah v. Des Moines General Hosp.*, 436 N.W.2d 53, 55 (Iowa 1989) (voluntary dismissals of medical malpractice actions did not divest district court of jurisdiction to hear sanction motions, which were filed within twenty-three days after the dismissals). In *Darrah* we said:

> Although plaintiff accurately states the general rule that voluntary dismissal divests the court of jurisdiction, we recognize an exception that retains the court's authority to adjudicate the collateral problem created by prior wrongful conduct of the dismissing party warranting rule 80(a) sanctions.

*Id.*

This was made even more clear in *Board of Waterworks Trustees v. City of Des Moines*, 469 N.W.2d 700 (Iowa 1991). In that case the district court disposed of the plaintiff's lawsuit by granting the defendant's motion for judgment notwithstanding the verdict. The plaintiff did not appeal within Iowa Rule of Appellate Procedure 5 time limits. The district court then ruled on the plaintiff's motion for sanctions, denying it. The plaintiff later filed a timely appeal as to the ruling on the motion for sanctions. The plaintiff contended that its notice of appeal preserved all issues as to the (1) judgment notwithstanding the verdict and (2) motion for sanctions because the notice was filed within thirty days of the district court's ruling on the sanctions motion. In rejecting this contention, we stated that

> [the ruling on the plaintiff's sanction motion] came after the order finally disposing of plaintiff's suit and did not extend the time for plaintiff to appeal the decision disposing of its suit because *it did not decide any issue in the main suit. The issue of sanctions was a separate, collateral and independent issue to plaintiff's lawsuit. Rulings deciding collateral and independent claims are separately appealable as a final judgment and do not act to extend the time limits to appeal earlier decisions on the merits.*

*Id.* at 702 (emphasis added) (citations omitted).

Here the motion for sanctions was filed before the expiration of the time for appeal from the final judgment on the underlying action. So the motion was filed in a timely fashion. *See Hearity v. Board of Supervisors*, 437 N.W.2d 907, 909 (Iowa 1989) (motion for Iowa Rule of Civil Procedure 80(a) sanctions need not be filed within a time frame shorter than the expiration of the time for appeal from the final judgment). Because the motion for sanctions did not decide any issue in the underlying fraud action, the district court had jurisdiction to hear and decide the motion even though the procedendo had issued in the underlying action.

 We think that, in the future, trial judges should decide motions for Rule 80(a) sanctions as soon after they are filed as is reasonably practicable. This would allow an opportunity to have the record on such motions considered by the appellate courts along with the appeal of the underlying action.

## IV. *The District Court Order Denying Sanctions Against Polking.*

Elmer and SSFI argue for the first time on appeal that Polking's conduct in signing various documents subsequent to the original petition subjects him to Rule 80(a) sanctions. The district court was presented with—and ruled upon—the sanctions issue as it related to Polking's signature on the original petition. Our inquiry is likewise circumscribed because our review is limited to those issues passed upon by the district court.

 Our review is for abuse of discretion. *Mathias v. Glandon*, 448 N.W.2d 443, 445 (Iowa 1989). We find such an abuse when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State ex rel. Miller v. National Dietary Research, Inc.*, 454 N.W.2d 820, 822 (Iowa 1990). "Unreasonable" in this context means not based on substantial evidence. *Citizens'*

*Aide/Ombudsman v. Rolfes,* 454 N.W.2d 815, 819 (Iowa 1990).

With these constraints in mind, we turn to the question of whether the district court abused its discretion in denying Rule 80(a) sanctions against Polking in connection with his signing of the original petition in the fraud action.

A. *The law pertaining to Rule 80(a).* Rule 80(a) pertinently provides that

> [c]ounsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: Counsel has read the motion, pleading, or other paper; that to the best of Counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation.... If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.

(Emphasis added.) *See also* Iowa Code § 619.19 (adopts similar certification requirements for parties as well as for attorney).

The italicized language makes it clear that Rule 80(a) requires the signer to certify that (1) the signer has read the petition, (2) the signer has concluded after reasonable inquiry into the facts and law that there is adequate support for the filing, and (3) the signer is acting without any improper motive. Iowa R.Civ.P. 80(a); *Weigel,* 467 N.W.2d at 280.

■ As to the "inquiry element" the signer must

> certify that to the best of his knowledge, information, and belief, formed after a reasonable inquiry, the pleading, motion, or other paper is (1) well grounded on the

facts and (2) warranted either by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

*Weigel,* 467 N.W.2d at 280 (citations omitted).

■ The "reasonableness" of the signer's inquiry into the facts and law

> may depend on such factors as the time available to the signer for investigation; whether the signer had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether the signer depended on forwarding counsel or another member of the bar.

*Id.* (citations omitted).

As the district court noted, *Weigel* actually speaks to the "signer's" obligation when talking about the "inquiry element" and to the "attorney's" obligation when talking about the "reasonableness" of the inquiry. Because of this shift from "signer" to "attorney," the district court raised the question of whether we were broadening the application of Rule 80(a) beyond the signer to include Polking in his role as referring attorney. The district court, however, stopped short of so interpreting *Weigel* and properly relied on what we said in *Mathias.*

■ We reject any notion that we intended in *Weigel* to broaden Rule 80(a) obligations beyond the signer. We reaffirm what we said in *Mathias:* Rule 80(a) sanctions are imposed on the "person signing, the represented party, or both." *Mathias,* 448 N.W.2d at 447. Contrary to Elmer's and SSFI's suggestion, *Mathias* specifically rejected any notion that Rule 80(a) imposes a continuing duty on the signer to dismiss the action if the signer later learns the client has no case. There is no such duty. *Id.* However, Rule 80(a) does apply

> to each paper signed, and would require that each filing reflect a reasonable inquiry. Other sanctions are available to address abusive tactics not related to the

signing of pleadings, motions, and other papers.

*Id.* (citations omitted).

■■■ The district court must view the reasonableness of the signer-attorney's judgment "as of the time the paper in question was filed, not with hindsight gained through hearing the evidence at trial." *Weigel,* 467 N.W.2d at 280 (citations omitted).

■■■ An objective—rather than a subjective—standard is used to measure the conduct of the signer-attorney. "The test is 'reasonableness under the circumstances' and the standard to be used is that of a reasonably competent attorney admitted to practice before the district court." *Id.* at 281 (citations omitted).

B. *Analysis.* The heart of the Rule 80(a) motion for sanctions here is found in these pertinent passages of the motion:

13. Throughout the entire modification proceedings attorney Tom Polking vehemently argued [that] Elmer Schettler had experienced unanticipated substantial growth and some of that should be shared with his ex-wife and children in the form of increased support. The trial court, the Court of Appeals, and the Iowa Supreme Court agreed there was substantial change in Elmer's circumstances, though not in Jane's, and ordered increased child support.

14. In the instant case, Attorney Tom Polking adopted a diametrically opposed viewpoint alleging defendants had conspired to defraud Jane *before* the time of dissolution by undervaluing the same corporation. The accuracy of "book value," however, remained undisputed throughout both actions.

15. Attorney Tom Polking thus within a six month period intentionally filed two separate actions asserting inconsistent theories of recovery....

16. Further, attorney Tom Polking filed fraud, conspiracy and breach of fiduciary duty claims against this defendant without factual support.

....

19. Under the provisions of I.R.C.P. 80(a), the effect of ... Tom Polking's signature to the petition is a certificate that counsel had read the petition, and to the best of counsel's knowledge, information and belief, formed after reasonable inquiry, said petition was well grounded in fact and warranted by existing law....

....

Wherefore, defendants ... pray this court ... enter judgment against ... Polking for ... damages ... resulting from the filing of the groundless and inappropriate claims....

In short, the motion alleges that Polking's conduct in filing the underlying fraud action was, in terms of Rule 80(a), not "well grounded in fact" and was not "warranted by existing law." Our task is to determine whether the district court abused its discretion in concluding otherwise.

■■■ 1. *Warranted by existing law.* Polking's theory was based on a shareholder fraud action. Our case law is clear that a fiduciary relationship exists between a managing officer of a corporation and a stockholder regarding the stockholder's shares of stock. *Dawson v. National Life Ins. Co.,* 176 Iowa 362, 157 N.W. 929 (1916). Any contract between such an officer and a shareholder that allows the officer to profit from the sale of the stockholder's shares to the stockholder's detriment is presumptively fraudulent and voidable. *Id.* at 390, 157 N.W. at 937. The burden is on the officer to rebut such presumption by affirmatively showing the contract was fairly procured for value. *Id.* at 390, 157 N.W. at 937–38. If the stock was procured for less than value, the burden is on the officer to rebut the presumption by making a full disclosure of all facts bearing on the value of the stock that were known to the officer and unknown to the stockholder. *Id.* at 390, 157 N.W. at 938. The measure of damages in such an action is the value of the stock without reference to the price agreed upon at the time of sale. *Id.* at 390, 157 N.W. at 938.

Elmer and SSFI think the fraud action was not warranted by existing law because Polking allegedly (1) asserted inconsistent theories and (2) impermissibly collaterally

attacked the property settlement in the original dissolution of marriage decree.

■ a. *Inconsistent theories—judicial estoppel.* Elmer and SSFI argue that in the modification action Polking was urging a substantial change in Elmer's postdissolution net worth. Jane won on that issue and she received additional child support.

At the same time, Elmer and SSFI point out, Polking brought the fraud action involving the same facts "knowing full well to support his claim he would have to argue a position diametrically opposed to [Jane's] posture in the modification case: ... Elmer['s] wealth was there but hidden at the time of the dissolution." Elmer and SSFI cite two cases that they claim would have made Polking realize, had he read them, that he could not assert an inconsistent position in a subsequent proceeding. Those cases are *Graber v. Iowa Dist. Court,* 410 N.W.2d 224 (Iowa 1987) and *Vennerberg Farms, Inc. v. IGF Ins. Co.,* 405 N.W.2d 810 (Iowa 1987).

■ We agree with the district court and Polking that these two cases do not support Elmer's and SSFI's contention that the fraud action was not warranted by existing law. It is true that when a theory has been presented successfully in one court, the doctrine of preclusion by inconsistent positions judicially estops that party from subsequently asserting an inconsistent position. *Graber,* 410 N.W.2d at 227. *Vennerberg Farms, Inc.,* 405 N.W.2d at 814. But the judicial estoppel doctrine does not apply unless there has been a judicial acceptance of the inconsistent position. *Graber,* 410 N.W.2d at 227. *Vennerberg Farms, Inc.,* 405 N.W.2d at 814.

Here, at the time the fraud action was *filed,* there had been no decision by any court in the modification action. Because we must view Polking's conduct at the time the fraud action was filed, we cannot say that such action was barred by judicial estoppel at that time. Parties may allege inconsistent theories and rely on them until there has been a judicial acceptance of one of them. Viewing Polking's conduct as of the time he signed and filed the fraud petition—as we must—we cannot say that objectively the action was not warranted by existing law.

■ b. *Collateral attack.* Elmer and SSFI also contend that the fraud action was in reality an impermissible collateral attack on the property settlement in the dissolution of marriage action in order to enhance that settlement. They correctly point out that a property settlement is not subject to modification in the absence of fraud, duress, or other grounds as would justify setting aside or changing a decree in any other case. *In re Marriage of Knott,* 331 N.W.2d 135, 136 (Iowa 1983). They also correctly point out that the time for asserting grounds to set aside the decree for fraud in procuring the property settlement under Iowa Rules of Civil Procedure 252 and 253 had passed. The only fraud that is not subject to these time constraints is extrinsic fraud which is "some act or conduct of the prevailing party which has prevented a fair submission of the controversy." *Stearns v. Stearns,* 187 N.W.2d 733, 735 (Iowa 1971). And, as Elmer and SSFI note, there is no allegation of extrinsic fraud here.

However, viewing the petition objectively, we agree with the district court that the petition's allegations support Polking's claim that the suit was a shareholder fraud action. Earlier we discussed the Iowa law on such an action which is consistent with Polking's claim that the lawsuit was based on fraud against Jane as a shareholder in SSFI. We therefore find no abuse of discretion in the district court's conclusion that the "instant action asserting predecree fraud did not *when filed* offend Rule 80(a)."

■ 2. *Well grounded in fact.* The record discloses that Polking conducted formal discovery in the modification action before he filed the fraud action. He reviewed a number of documents he obtained from Elmer and his accountant. Elmer vigorously resisted such discovery and only after being threatened with sanctions did he relent and turn over the documents requested. Besides deposing Elmer and his accountant, Polking sought the advice of experts about the valuation of SSFI. He also secured Jane's dissolution file from her dissolution of marriage attorney. This file contained virtually nothing about Elmer's financial condition, much

less anything about the value of SSFI. The dissolution of marriage attorney relied entirely on Elmer, Elmer's accountant, and Elmer's attorney regarding Elmer's financial worth and the value of SSFI.

During the course of this discovery, Polking learned that Elmer obtained Jane's 20% ownership interest in SSFI in two separate transactions, one before the dissolution of marriage and one as part of the dissolution of marriage property settlement. The corporation's book value at the time of the dissolution of marriage was $708,000, yet Elmer obtained Jane's 20% ownership interest on a book value basis of $580,000.

Before the fraud action was filed, Polking discovered a financial statement showing Elmer's financial condition on September 30, 1983—six months before the dissolution of marriage decree was entered. The statement shows a market value of Elmer's 80% ownership interest in SSFI to be $1,268,900—more than twice the book value basis upon which Elmer obtained Jane's stock. Similar statements dated September 30, 1982, and April 16, 1984, show Elmer's 80% interest in SSFI to be $1,283,444 and $1,586,238, respectively. All three statements contained signature lines for Elmer but none for Jane.

Jane told Polking that she had not seen these documents, that she would not know what they meant had she seen them, and that she relied on Elmer and his accountant as to the value of the SSFI stock she gave up.

Along with these financial statements, Polking found a publication on how to value a closely held seed company. With the publication was a note from Elmer to his accountant in which Elmer asked, "What do you think about this, Ron?" Polking testified this convinced him that Elmer knew how to value a corporation.

The expert Polking sought out confirmed that book value was not a proper way to value SSFI and the outstanding stock in the corporation. The expert placed a value on SSFI even higher than what Elmer had valued it.

In 1988 SSFI was sold for nearly $2,500,000.

Contrary to Elmer's and SSFI's contention, we think from an objective standpoint the record amply supports the district court's conclusion that the shareholder fraud action was well grounded in fact. The district court was therefore well within its discretion in coming to this conclusion.

Sometime after the fraud action was filed, Elmer produced a financial statement he obtained from his bank. The statement bore not only his signature but Jane's signature as well. Elmer and SSFI rely heavily on this piece of evidence. They contend that this is conclusive evidence that Jane, too, knew what SSFI was worth.

We reject this contention. The timing of the financial statement's discovery and Jane's insistence that she did not remember the document, or even understand it, all militate against Elmer's and SSFI's contention.

In summary, Polking was a signer to the original petition in the fraud action. Measured by the yardstick of a reasonable signer in Polking's position, we see no abuse of discretion in the district court's determination that sanctions against Polking were unwarranted. Any facts developed after the petition was filed are simply irrelevant to the propriety of the filing. The perfect acuity of hindsight has no place in a Rule 80(a) motion for sanctions.

## V. The Remaining Issues.

Elmer and SSFI finally contend that the district court should have ordered Rule 80(a) sanctions against Polking regarding SSFI and also delineate what they feel a reasonable sanction in this case would be.

Polking did not sign the pleading adding SSFI as a party defendant. Ordway did. Rule 80(a) therefore did not apply to Polking as to this document. So the district court was also well within its discretion in denying Rule 80(a) sanctions against Polking as to the pleading adding SSFI as a party defendant.

## VI. Disposition.

Because we conclude that the district court did not abuse its discretion in denying Rule 80(a) sanctions against attorney Polking, we annul the writ. In doing so, we are not unmindful of the following observation by the

district court about the apparently acrimonious nature of the case underlying this appeal:

> [Elmer] testified in his own behalf. He persuasively described the impact this litigation has had not only upon himself financially but also insofar as it may have ruptured a delicate but healing relationship as among the original family. While counsel often develop ulcers, usually the parties do the long-term bleeding.
>
> . . . .
>
> This unfortunate matter has progressed from the tragic aftermath of a failed marriage to a point where an imaginative, successor attorney has locked horns with the economically fortunate husband. The attorney may well have envisioned himself as a knight-on-white-horse seeking to redress a wrong. The husband, who under every decision of every court at every stage of every one of these proceedings has been vindicated, claims foul.

Potential ethical violations associated with this case—if any—must be directed to the appropriate forum.

**WRIT ANNULLED.**