**Karen HARRIS, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR JOHNSON COUNTY, Defendant.**

No. 95–1835.

Court of Appeals of Iowa.

Aug. 22, 1997.

Dennis A. Bjorklund, Iowa City, for plaintiff.

Chris Bruns and Patrick M. Roby, Cedar Rapids, for defendant.

Heard by HABHAB, C.J., and CADY and STREIT, JJ.

HABHAB, Chief Judge.

Karen Harris, an Iowa City attorney and plaintiff in this certiorari proceeding, filed an action pro se against Daniel Bray, another Iowa City attorney, asserting claims of legal malpractice and intentional infliction of emotional distress. Harris alleged Bray revealed information protected by the attorney-client privilege to her husband's attorneys during and after Bray's representation of her in a dissolution of marriage proceeding. After Harris dismissed her petition without prejudice, Bray moved the court to impose sanctions under Iowa Rule of Civil Procedure 80(a). The court sustained the motion and entered judgment against Harris for $1000 which represented the deductible Bray was obligated to pay under the terms of his malpractice insurance policy when the insurer undertook its duty to defend Bray in the action. Harris appeals.

■ We treat the notice of appeal as an application for issuance of a writ of certiorari. *See Hearity v. Iowa Dist. Ct.*, 440 N.W.2d 860, 862–63 (Iowa 1989) (holding review of district court order imposing sanctions is by application for issuance of a writ of certiorari). We grant the writ and review the assignments of error in a certiorari context.

## I. Background Facts and Proceedings

In October 1991, Harris retained Bray to represent her in a dissolution of marriage proceeding she had been prosecuting pro se seeking to dissolve her marriage to her husband, Dr. Courtney Harris. Dr. Harris was represented by Robert Jilek and Steve Gerard.

On November 13, 1991, Jilek phoned Bray and told him Dr. Debra Suda, a psychiatrist who had been counseling Harris and her husband, had phoned him to express concerns regarding Harris. Dr. Suda said she was afraid of Harris and that Harris might seriously injure Dr. Harris and anyone who tried to help him. Jilek asked Bray to take possession of two firearms Harris owned. Bray then phoned Harris who told Bray he could make any arrangements he wished concerning the firearms.

The next day a hearing was scheduled to address temporary visitation issues. Jilek and Gerard were present with their client, Dr. Harris. Bray and another lawyer from his office were present with Harris. Jilek said he wanted Bray to take possession of the guns. Harris became upset and told Bray he could do what he wanted with the guns.

Jilek, Dr. Harris, Bray, and Harris went to Bray's office to attempt to resolve the visitation issue. Bray asked Harris if she wished to have a private conversation with him. She declined. An agreement was reached whereby Bray would take possession of the guns as soon as possible and inform Jilek and Gerard in advance if he intended to return the guns to Harris. According to Bray, Harris approved of the agreement.

The guns were being held temporarily at Fin and Feather Sports Center for repair and trade. Bray told Harris he needed authorization to retrieve the guns. Harris faxed a letter to Bray which read, "This letter is to authorize Dan Bray to do whatever he wants on my behalf at Fin and Feather." Bray took possession of the guns and stored them at his residence. The next day Bray confirmed to Jilek and Gerard he had taken possession of the guns.

On December 17, 1991, Bray decided he no longer wanted to represent Harris. He filed his withdrawal as attorney with Harris's consent. On December 19, Gerard then phoned Bray and asked about the guns. Bray said he had them, they had not been returned, and the agreement was still in effect.

In July 1992, the dissolution trial began. On July 29, Jilek and Gerard phoned Bray and asked whether he still had the guns. They told Bray that Harris had testified Bray was not holding any firearms for her. Bray told them all he could say was he had a pistol and a long gun in his possession and he had not returned them to Harris. On July

30, Gerard served Bray with a subpoena to testify in the dissolution proceedings.

Gerard called Bray as a witness. Bray responded to several questions with the statement, "That is a matter of record in the case." Gerard then asked whether Bray possessed any weapons belonging to Harris. When Harris's attorneys objected and asserted the attorney-client privilege, Gerard made a professional statement and offer of proof. Gerard stated on three occasions Bray "freely and voluntarily" told him he held two firearms belonging to Harris. Gerard continued to question Bray on the issue of the guns and Harris's attorney continued to object. The court stopped the questioning and recessed the trial to conduct research on the attorney-client privilege. Gerard reserved the right to recall Bray.

On July 31, Gerard informed the court the discussions concerning the firearms were held in the presence of Harris, Bray, Gerard, and Jilek. Gerard advised the court Bray never disclosed any statements Harris made, but only the one act of possessing the guns. The court ruled Bray could testify to nontestimonial acts, that is, he could testify whether or not he received any firearms from Harris or whether he obtained any at her request. The court reserved ruling on any testimonial statements Bray might offer until Bray was recalled to testify. At that time the court would consider whether the privilege applied and, if so, whether it had been waived. Harris was present when Bray testified and when the court issued its ruling.

Gerard did not recall Bray as a witness. Bray made several attempts to contact Harris with regard to the weapons. When he was unsuccessful, he directed his receptionist to deliver the weapons to Harris's office. On November 23, 1993, Harris wrote Bray a letter asking him to "stop talking to people about [her] case." Bray wrote back stating he did not understand her letter and requested she be more specific so he could respond.

At the hearing on sanctions, Bray maintained he never disclosed any confidential information or revealed any conversations he had with Harris, either during or after his representation of her. He indicated he told Jilek of Harris's allegations against Dr. Harris and details of their marital relationship, information he characterized as that typically discussed by attorneys in negotiations geared to resolving cases.

Harris presented evidence consisting of her own testimony and documentary evidence. Harris testified Bray asked where the guns were and she told him she sent them to Fin and Feather to be sold. Bray told her to write a letter authorizing him to do whatever he wanted with the guns. Harris assumed Bray wanted the guns for his personal use or to hold as collateral for unpaid attorney fees.

Harris testified she did not remember any public conversations regarding the firearms. She then categorically denied Jilek, Gerard, or any other people were present when she and Bray discussed the issue of guns. She offered as a caveat that the dissolution proceedings were a difficult time in her life.

Harris was upset when Bray appeared and testified. She heard Gerard state in his offer of proof Bray voluntarily revealed on three occasions he possessed firearms belonging to Harris. She believed Bray violated the attorney-client privilege when he communicated with Gerard. She wrote Bray a letter stating her desire to meet with him after she reviewed the transcript. She demanded he explain to her at that time why he violated the privilege. She did not receive a response from Bray.

On July 29, 1994, Harris brought suit against Bray asserting a count of legal malpractice and a count of intentional infliction of emotional distress. She supported both counts with the assertion, "Bray approached Karen's ex-husband's attorneys and offered them information that was used to Karen's detriment during the trial." Bray answered and requested sanctions in a separate division. The parties began to conduct discovery and Bray moved to unseal the dissolution file. Harris deposed Jilek and learned he would testify to the presence of other people in conversations involving the guns. Harris was scheduled to be deposed on February 27, 1995. She informed Bray's attorney she would be dismissing her petition without prejudice, but has since maintained she would refile it if evidence surfaced supporting her claims. In defending the action,

Bray incurred attorney fees of approximately $5000, of which he will only have to pay $1000, which represents the deductible under his malpractice insurance policy.

Harris maintained Jilek's deposition was not credible and he was merely collaborating a defense. She insinuated the defense had been fabricated. Bray denied Harris's allegation that he approached Jilek and Gerard and offered privileged information. He maintained the allegation was false and Harris knew it was false when she filed her petition. The district court sustained Bray's rule 80(a) motion for sanctions and ordered Harris to pay Bray $1000.

## II. Certiorari

■■■ Review of a district court order imposing sanctions is by application for issuance of a writ of certiorari, not by appeal. *Hearity,* 440 N.W.2d at 862. We proceed in this case as if the proper form of review had been sought. Iowa R.App. P. 304. We will grant a writ of certiorari when an inferior tribunal has exceeded its jurisdiction or otherwise acted illegally. *Id.* We may sustain the proceedings below, annul the proceedings wholly or in part, or prescribe the manner in which either party may proceed, but we may not substitute an amended order for that of the district court. *Id.* at 862–63.

## III. Sanctions

■■■ We review for an abuse of discretion. *Schettler v. Iowa Dist. Ct.,* 509 N.W.2d 459, 464 (Iowa 1993). We will find an abuse of discretion when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* An exercise of discretion is unreasonable if it is not based on substantial evidence. *Id.* We will correct erroneous application of the law in the exercise of that discretion. *Weigel v. Weigel,* 467 N.W.2d 277, 280 (Iowa 1991).

### A. Sanctions under Rule 80(a)

Rule 80(a) provides, in part:

Counsel's signature to every motion, pleading or other paper shall be deemed a certificate that: Counsel has read the motion, pleading, or other paper; that to the best of Counsel's knowledge, information, and belief, formed after reasonable inquiry, it

is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation.

Iowa R. Civ. P. 80(a). If an attorney signs a motion, pleading, or other paper in violation of the rule, the court must impose sanctions, which may include an order to reimburse the other party for reasonable expenses and attorney fees. *Id.*

■■■ Rule 80(a) requires certification a signer (1) has read the motion, pleading, or other paper; (2) has concluded after reasonable inquiry into the facts and law there is adequate support for the filing; and (3) is acting without any improper motive. *Weigel,* 467 N.W.2d at 280. Each duty is independent of the other, meaning a breach of any one constitutes a violation of the rule. *Hearity,* 440 N.W.2d at 864; *see* Cady, *Curbing Litigation Abuse and Misuse: A Judicial Approach,* 36 Drake L.Rev. 483, 489–507 (1986–87). The parties have framed and argued the issue in terms of the second duty, i.e., whether Harris conducted a reasonable inquiry before filing her petition.

■■■ The duty to make a reasonable inquiry requires the signer to:

"certify that to the best of his knowledge, information, and belief, formed after a reasonable inquiry, the pleading, motion, or other paper is (1) well grounded on the facts and (2) warranted either by existing law or by a good faith argument for the extension, modification, or reversal of existing law."

*Schettler v. Iowa Dist. Ct.,* 509 N.W.2d 459, 465 (Iowa 1993) (quoting *Weigel,* 467 N.W.2d at 280). The reasonableness of the inquiry is measured as of the time the paper was filed and is measured by an objective standard. *Weigel,* 467 N.W.2d at 280–81. The test is reasonableness under the circumstances, and the standard used is that of a reasonably competent attorney. *Id.* at 281.

■■■ To determine whether an attorney's inquiry into the facts and law was reasonable, the court considers all relevant circum-

stances, including those factors set forth in *Mathias v. Glandon,* 448 N.W.2d 443, 446 (Iowa 1989).

### B. Pre-filing Inquiry

■ Applying the abuse of discretion standard of review, we examine the record to evaluate the reasonableness of Harris's pre-filing inquiry. The district court found Harris was present in court on July 30, 1992, when Gerard called Bray as a witness, and on July 31, when the court made its ruling on the attorney-client privilege objection. The court ruled Bray could testify to the non-testimonial matters of whether he received guns from Harris or whether he obtained any at her request.

Bray did not testify to any communications he had with Harris. Harris's attorneys objected to questions asking merely whether Bray possessed firearms belonging to Harris. Bray never revealed the answer to these questions. Bray did reveal, in answers to two leading questions, he obtained firearms from Fin and Feather that did not belong to him. The court recessed the proceeding and Bray was never recalled to testify.

We find no abuse of discretion to the extent the district court sanctioned Harris for basing her petition on testimony given on July 30. She was present and would have known Bray did not testify as to any confidential communications. The court ruled the next day Bray's testimony to possession of firearms described non-testimonial facts and was not prevented by assertion of the attorney-client privilege.

Harris also based her petition on out-of-court communications allegedly made by Bray to Gerard and Jilek. Harris based her allegation on the transcript of Bray's testimony on July 30, particularly Gerard's offer of proof. She also relied on Bray's refusal to respond to her letter, which asked Bray to cease talking about her divorce and demanded an explanation. Again, we find no abuse of discretion to the extent the district court sanctioned Harris for basing her petition on this ground. Harris had to know at the time and under the circumstances of the events complained of that the attorney-client privilege either did not exist or had been waived.

### IV. Summary

In summary, we conclude this opinion with the following statement:

Appellate courts reviewing sanction orders under the federal rule have applied three separate standards: legal issues, concerning whether a violation of the rule occurred and whether sanctions were required, are reviewed de novo; to the extent factual issues are involved, the trial court's findings stand unless clearly erroneous; and in terms of the specific sanction imposed, trial courts are granted a wide degree of discretion which is not disturbed unless that discretion is abused. *See* 2A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 11.02[4] (2d ed.1987); *Thomas v. Capital Security Serv., Inc.,* 812 F.2d 984, 989 (5th Cir. 1987). These standards are in accord with our own relative to certiorari proceedings. *See State v. West,* 320 N.W.2d 570, 574 (Iowa 1982) ("As used in a certiorari action, the term 'illegally' means substantial evidence does not exist to support the findings of fact on which the lower court based its conclusions of law or, when the evidence is uncontroverted, error in interpreting the law."); *Farley v. Glanton,* 280 N.W.2d 411, 414 (Iowa 1979) ("Review of trial court discretion by certiorari is very limited, being merely to determine whether there has been an abuse thereof.").

*Hearity,* 440 N.W.2d at 864.

■ As an appellate court, our review of the trial court's discretion by certiorari is very limited. Our ultimate task is merely to determine whether there has been an abuse of discretion. From our review of the exhaustive record before us, and after applying the principles of law relating to certiorari, we conclude the trial court did not exceed its jurisdiction, nor did it act illegally, nor has it abused its discretion.

We affirm the trial court. Since we have treated this as a certiorari action, it follows that the writ is annulled.

**WRIT ANNULLED.**