Diana J. GARRETT f/k/a Diana
J. Huster, Appellee,

v.

Duane T. HUSTER, Appellant,

and

Ellen Jandebeur, Roger Huster, Valerie Jo Townsend, Timothy Huster, Rusty Huster, and Edward Huster, Defendants.

No. 03–0541.

Supreme Court of Iowa.

July 21, 2004.

David P. Jennett, Storm Lake, for appellant.

Warren L. Bush, Wall Lake, for appellee.

TERNUS, Justice.

Appellant, Duane T. Huster, appeals the district court's judgment quieting title to certain real estate in his former wife, appellee, Diana J. Garrett. He argues the trial court erred in failing to uphold his title to the property on the basis of (1) adverse possession, (2) the bar of Iowa Code section 614.17A (2001), (3) the doctrine of laches, or (4) the doctrine of equitable estoppel. Upon reviewing the arguments of the parties and the applicable law, we conclude the trial court correctly rejected these theories and properly quieted title to the disputed land in Garrett.

## I. Background Facts and Proceedings.

Duane Huster and Diana Garrett were divorced in 1985. The decree awarded Garrett an undivided 2/3 interest and Huster an undivided 1/3 interest in a ten-acre parcel of property owned by the parties. In addition, Garrett was awarded an undivided 1/3 interest in Huster's undivided 1/4 remainder interest in another 200 acres of land. Huster's mother, Betty Huster, owned an undivided half interest in the 200 acres and held a life estate in the other undivided half interest. Huster's three siblings each held an undivided 1/4 remainder interest in the undivided half interest subject to Betty's life estate.

The dissolution decree required Huster to pay marital debt owed to Sac City State Bank that was secured by the parties' interests in the ten-acre parcel and the 200 acres of land. When Huster failed to pay this debt, the bank foreclosed its mortgage. Betty purchased the parties' interests at a 1987 sheriff's sale and received a sheriff's certificate of purchase transferring Huster's and Garrett's interests in these parcels subject to their statutory right of redemption. See Iowa Code § 626.95 (1987) (providing a one-year redemption period). Although Garrett was served notice of the foreclosure, she did not appear. She understood the property would be sold, but she was unaware of the purchaser's identity.

Garrett did not redeem the property and Huster assigned his right of redemption to his mother. Betty, however, did not obtain a sheriff's deed within eight years of the sheriff's sale as prescribed by Iowa law. See id. § 626.97.[1] During this eight-year period and until Betty died in 2000, Betty leased the property to other family members. Huster received the rent on the 10-acre parcel and paid the real estate taxes on this land. Betty received the rent and paid the taxes on the 200 acres. Garrett did not receive any portion of the rental payments and did not pay any of the taxes.

When Betty passed away in 2000, she left her property to her four children, including the defendant, per stirpes. In November 2001, the probate court entered an order for declaratory judgment, canceling the 1987 sheriff's certificate and declaring that all rights arising from the sheriff's sale were barred. On the same date, the court entered an order on the final report in the probate of Betty's estate, holding that Betty's purchase at the 1987 sheriff's sale gave her no rights with respect to the 10-acre parcel or the 200 acres.

---

1. Section 626.97 provides:

   After eight years have elapsed from the date of issuance of any sheriff's certificate of sale, and no action has been taken by the holder of such certificate to obtain a deed thereunder, it shall be the duty of the sheriff and clerk of the district court to cancel such sale and certificate of record and all rights thereunder shall be barred.

   This statute was intended to eliminate "uncertainties in land titles [caused by] the failure to present outstanding sale certificates for long periods." Appleby v. Farmers State Bank, 244 Iowa 288, 296, 56 N.W.2d 917, 922 (1953).

Garrett, who had moved to Colorado following the parties' divorce, first learned a few months after the closing of Betty's estate that Betty had never obtained a sheriff's deed after her purchase of the property at the foreclosure sale. Garrett then filed this quiet title action in May 2002, naming Huster and Betty's other heirs as defendants. Only Huster filed an answer and contested Garrett's title.

Garrett claimed that based on the dissolution decree and the termination of Betty's life estate, Garrett held fee simple title to an undivided 2/3 interest in the 10–acre parcel and an undivided 1/12 interest in an undivided 1/2 interest in the 200 acres. Huster alleged he had acquired title by adverse possession. He also asserted Garrett's action was barred by Iowa Code section 614.17A, which extinguishes claims to real estate against the record title holder in possession under certain circumstances. Finally, Huster asserted the affirmative defenses of laches and estoppel. Huster also filed a counterclaim, seeking to quiet title to the disputed property in himself. The trial court ruled in favor of Garrett on every issue.

■ Huster appealed. Our review of this quiet title action is de novo. *Larman v. State,* 552 N.W.2d 158, 161 (Iowa 1996); Iowa R.App. P. 6.4.

II. *Adverse Possession.*

■ "A party claiming title by adverse possession must establish *hostile,* actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Trust Estate v. City of Storm Lake,* 423 N.W.2d 13, 15 (Iowa 1988) (emphasis added). We construe this doctrine strictly. *See id.*

■ Huster seeks to satisfy the ten-year possession requirement in part by relying on the possession of his predecessor-in-title, Betty. Garrett responds that Betty's possession was not hostile or adverse for the eight years Betty held equitable title to the property pursuant to the sheriff's certificate. We agree.

"A possession that is in law rightful and not an invasion of the rights of others is not adverse." 3 Am. Jur. 2d *Adverse Possession* § 43, at 124 (2002); *accord Chadek v. Alberhasky,* 253 Iowa 32, 37, 111 N.W.2d 297, 300 (1961) ("Possession, to be adverse, must be hostile."); *Creel v. Hammans,* 234 Iowa 532, 535, 13 N.W.2d 305, 307 (1944) (stating adverse possession "is not based on, but is hostile to, the true title"). Here, Betty held the property to the exclusion of all others once Garrett failed to redeem within one year of the sheriff's sale. This conclusion is dictated by Iowa Code section 628.16, which states: "Unless the defendant redeems, the purchaser ... will hold the property *absolutely.*" Iowa Code § 628.16 (emphasis added). We think this description of a purchaser's rights is accurate even though title may subsequently be lost by virtue of the buyer's failure to obtain a deed within eight years of the sale. *See id.* § 626.97 (providing sale cancelled and all rights from sheriff's certificate barred if no deed issued within eight years). Had the legislature, by its enactment of section 626.97, intended to alter the purchaser's status during the seven-year period following expiration of the time for redemption, it would have also amended section 628.16 to indicate that the purchaser's rights were something less than absolute during this interim period. Because the legislature chose not to alter section 628.16, that statute's characterization of the buyer's rights to the property as absolute applies during the seven-year period for issuing a deed.

Because Betty held the property absolutely from 1988 through 1995, Garrett had

no possessory rights during this time. *See Conner v. Long,* 63 Iowa 295, 299, 19 N.W. 221, 223 (1884) (stating when the right to redeem expired, all right and interest of the former owner in the premises expired also). Only after Betty failed to have a sheriff's deed issued within this period did the property revert to its former owners, thereby resurrecting Garrett's rights in the property. *See* Iowa Code § 626.97. Accordingly, Betty's possession did not become hostile or adverse to Garrett until 1995, when the sheriff's sale was cancelled.[2] Garrett filed this action seven years later. Therefore, as the trial court correctly held, Huster and his predecessor in title did not hold the property adversely to Garrett for a sufficient period of time to obtain title by adverse possession.

### III. *Section 614.17A Bar.*

Section 614.17A(1) provides:

1. After July 1, 1992, an action shall not be maintained in a court, either at law or in equity, in order to recover or establish an interest in or claim to real estate if all the following conditions are satisfied:

*a.* The action is based upon a claim arising more than ten years earlier or existing for more than ten years.

*b.* The action is against the holder of the record title to the real estate in possession.

*c.* The holder of the record title to the real estate in possession and the holder's immediate or remote grantors are shown by the record to have held chain of title to the real estate for more than ten years.

*Id.* § 614.17A(1). Section 614.17 states that for purposes of section 614.17A, possession may be shown of record by an affidavit of possession filed with the county recorder. Huster filed such an affidavit on December 27, 2001, stating that he was "in complete actual and sole possession of" the ten-acre parcel and his 1/4 undivided remainder interest in an undivided 1/2 interest in the 200 acres. He asserts that section 614.17A(1) bars Garrett's claim to an interest in these properties.

■ The flaw in Huster's argument is his failure to establish that he and his immediate grantor (Betty) held record chain of title for more than ten years as required by section 614.17A(1)(*c*). After the dissolution decree was issued, Garrett became the record title holder to her undivided interests in the 10–acre parcel and the 200 acres. *See id.* § 598.21(11) (requiring clerk of court to issue a certificate under chapter 558 when court orders transfer of title in real estate and to forward certificate to county recorder for recording). As we have already discussed, after Betty's purchase of these interests was cancelled in 1995 upon her failure to obtain a sheriff's deed, legal and equitable

---

**2.** Huster relies on this court's decision in *Moffitt v. Future Assurance Associates, Inc.,* 258 Iowa 1160, 140 N.W.2d 108 (1966), to support his claim that Betty's possession during the seven-year period for obtaining a deed was hostile. In that case, we held adverse possession can run against the holder of legal title. *Moffitt,* 258 Iowa at 1169, 140 N.W.2d at 113. But in *Moffitt* the party purporting to possess the property adversely to the former owner who held legal title was a third party who claimed it as his own as against the legal titleholder and the tax purchaser who held equitable title. *Id.* at 1164, 140 N.W.2d at 110. Thus, in *Moffitt,* the question was whether the third party's possession was hostile to the legal and equitable title holders' rights. In contrast, here, the person claiming to possess the property adversely to the former owner is the holder of the equitable title. Accordingly, the issue of hostile possession does not involve a third party, but rather concerns the possessory rights of the former owner vis-à-vis the purchaser at foreclosure. Therefore, our analysis in *Moffitt* is not controlling in the present case.

title reverted to Huster and Garrett, the record title holders. Even though Huster claims to have been in possession of the property after 1995, he only had record title to his interests in the land, not to Garrett's interests. Therefore, he did not hold record title to the disputed interests for more than ten years and consequently cannot rely on section 614.17A(1) to extinguish Garrett's interests in the subject real estate.

### IV. *Laches.*

■■■ The following principles govern our consideration of Huster's claim that Garrett's rights are barred by laches:

> Laches is an equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another. The party asserting the defense has the burden to establish all the essential elements thereof by clear, convincing, and satisfactory evidence. Prejudice is an essential element of laches.

*State ex rel. Holleman v. Stafford,* 584 N.W.2d 242, 245 (Iowa 1998) (citations omitted). The mere passage of time will not give rise to an inference of prejudice. *See State v. Seager,* 571 N.W.2d 204, 209 (Iowa 1997).

■■■ Huster's claim of prejudice in the present case is the inability of Betty's "heirs" to recover the money paid by Betty in the foreclosure action since the estate is now closed. Although Huster does not identify the nature of this right of recovery, we surmise he believes the heirs would have had a claim against Garrett, as he asserts the money paid by Betty was in satisfaction of Garrett's debt. Initially, we note that Betty's heirs are not asserting a laches defense; they did not defend against Garrett's quiet title action. Only Huster claims he was prejudiced by Garrett's delay and there is certainly no preju-

dice to Huster. The dissolution decree required Huster to pay the money owed by Huster and Garrett to the Sac City State Bank. Thus, any payment made by Huster's mother in the foreclosure action was on account of *Huster's* debt, not Garrett's debt. Assuming this payment was recoverable, we are at a loss to identify who Huster or any other heir would hold accountable for this payment other than Huster himself. Consequently, Huster cannot claim prejudice from his inability to pursue this alleged cause of action. Therefore, we, like the trial court, find no merit in Huster's laches defense.

### V. *Estoppel by Acquiescence.*

■■■ Anticipating difficulty in establishing prejudice, Huster also relies on the doctrine of estoppel by acquiescence, which requires no showing of detriment. *See Westfield Ins. Cos. v. Economy Fire & Cas. Co.,* 623 N.W.2d 871, 880 (Iowa 2001) ("Under Iowa law, it is not necessary to prove prejudice to establish estoppel by acquiescence."). "[E]stoppel by acquiescence occurs when a person knows or ought to know of an entitlement to enforce a right and neglects to do so for such time as would imply an intention to waive or abandon the right." *In re Marriage of Fields,* 508 N.W.2d 730, 731 (Iowa 1993).

■■■ Here, the record shows that, until shortly before this suit was filed, Garrett had no actual knowledge that Betty did not obtain a deed so as to nullify the foreclosure sale. Upon acquiring this information, Garrett immediately commenced this quiet title action.

In addition, the circumstances do not support a conclusion that Garrett should have known of her rights earlier. Garrett's failure to discover that her interest in the ten-acre parcel had been restored in 1995 is attributable directly to Huster's

decision to treat the property as his own, keeping the rental payments rather than forwarding Garrett's portion to her. As for Garrett's remainder interest in the 200 acres, that interest did not vest until Betty's death in June 2000. Garrett filed this action less than two years later. Given these circumstances, we agree with the trial court that Huster has failed to establish estoppel by acquiescence.

### VI. *Summary.*

Huster did not prove he acquired title to Garrett's interests in the subject property through adverse possession because he and his predecessor-in-title did not possess the property adversely to Garrett for the requisite ten-year period. Additionally, Garrett's claim is not barred by section 614.17A(1) because Huster was not the record title holder of Garrett's interests, as required by that statute.

Huster's equitable defenses also fail. Huster did not establish laches because he did not demonstrate he suffered any prejudice from Garrett's delay in asserting her rights in the property. There is no merit in Huster's claim of estoppel by acquiescence because Garrett did not neglect to enforce her rights for such a period of time after she knew or should have known of her rights so as to indicate a waiver or abandonment of her rights.

Based on these conclusions, we affirm the trial court's order quieting title in Garrett to an undivided 2/3 interest in the 10-acre parcel and to an undivided 1/12 interest in an undivided 1/2 interest in the 200 acres.

**AFFIRMED.**

All justices concur except LARSON, J., who takes no part.