[EDITORS' NOTE: THE PUBLICATION STATUS OF THIS OPINION HAS NOT BEEN DETERMINED. THE PRECEDENTIAL VALUE OF CASES WHICH ARE NOT YET PUBLISHED IS GOVERNED BY IOWA CT. R. 6.14 (5).]
Violet Clymer brought an action to quiet title against Merle Shawd, asserting adverse possession to a parcel of land adjacent to her property. She also asked the court to bar Shawd from claiming any right or title to the disputed parcel. The district court, after finding Clymer had failed to prove all the elements of adverse possession, dismissed her petition and Clymer appeals. Shawd cross appeals the district court's prior summary judgment ruling. We affirm both rulings.
In 1958, Violet Clymer and her husband, Ray, bought a parcel of real estate in Woodward, Iowa. The Clymers built their home on this property and although Ray died several years ago, Violet continued to live there as of the date of trial. Soon after they moved into their new home, the Clymers began caring for some property that adjoined their backyard, as it was overgrown with weeds. The Clymers knew they did not have legal title to this land but Violet testified they began maintaining the disputed property because it was "either do that or look at the weeds." Since that time, the Clymers have mowed, planted grass, trees and shrubs, maintained a garden, and openly used the property as a part of their extended yard.
The Clymers wanted to purchase the disputed property so they diligently searched city and county real estate records to determine who owned it. The last known record titleholder appeared to be Henry Hutsonpiller who obtained title from the State of Iowa by a patent recorded in 1882. Unable to determine current ownership of the disputed property, in 1989 the Clymers employed an attorney to prepare an affidavit of possession, later filed in the Dallas County Recorder's Office, asserting their interests in the disputed property. However, the legal description on the affidavit was faulty as it only described the real estate the Clymers already owned.
In 2005, Shawd sent a letter to Clymer that stated he owned the disputed property and ordered Clymer to cease any activity on "his" property. Shawd based his claim of ownership from a quitclaim deed he received in 1999 from CMC Heartland Partners[1] (CMC). Eventually, Clymer filed this quiet title action, naming only Shawd as the defendant. On Clymer's motion for summary judgment, the district court found that there was no evidence that CMC had any interest in the disputed property to convey to Shawd and that therefore Shawd only had, at best, color of title. As to Clymer's petition to quiet title, the court denied summary judgment because "a material dispute of fact exists as to whether [Clymer] has met all the criteria to establish adverse possession." After a trial on the matter, the district court dismissed her petition. The court held that Clymer did not satisfy the good faith claim of right necessary to carry her burden to prove adverse possession. The court also denied Clymer's request that Shawd be barred and forever stopped from claiming a right or title to the disputed property and denied Clymer's motions for sanctions. Clymer appeals and Shawd cross appeals, asserting the district court erred in ruling on summary judgment that he did not receive marketable title from CMC.
Summary Judgment Ruling as to Shawd's Interest.
We review the district court's summary judgment ruling for correction of errors at law. Iowa R. App. P. 6.4; Stevens v.Iowa Newspapers, Inc., 728 N.W.2d 823, 827 (Iowa 2007). Summary judgment shall be granted when the entire record demonstrates there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); Stevens,728 N.W.2d at 827. We review the record in the light most favorable to the nonmoving party. Stevens, 728 N.W.2d at 827.
The district court's summary judgment ruling stated:
 There is nothing that the Court can find in the record before it that indicated the railroad had any interest in the disputed property to convey to the defendant Shawd's predecessor in title. . . . The Court can find no material dispute on that issue. The defendant [Shawd] may have received color of title but did not receive actual title by the conveyance he received.
Clymer's petition before the court was to quiet title to the property in her, as against Shawd, and for the court to rule that Shawd "be barred and forever stopped from claiming a right or title to said real estate." On summary judgment, the court did not grant either of Clymer's requests for relief. Becausethis record did not contain any evidence that CMC had any interest in the disputed property to convey to Shawd, the district court, on summary judgment, correctly found no material fact regarding his title to the property in dispute to be litigated in this case. The court's ruling further stated that the only material fact left to decide at trial was whether Clymer had satisfied the elements of adverse possession. After trial, the court reiterated the summary judgment ruling regarding Shawd's title, as set forth above, as the law of the case, but did not forever bar Shawd from attempting to establish title "at some future time on some basis other than his Quitclaim Deed".
Clymer's Quiet Title Action.
Clymer asserts on appeal that the district court erred in dismissing her petition to quiet title. A quiet title action is an equitable action; therefore, we review a quiet title action de novo. Iowa R. App. P. 6.4; Garrett v. Huster,684 N.W.2d 250, 253 (Iowa 2004) (citing Larman v. State,552 N.W.2d 158, 161 (Iowa 1996)). We give great weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.14(6)(g).
"A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years."C.H. Moore Trust Estate v. City of Storm Lake,423 N.W.2d 13, 15 (Iowa 1988) (citing Marsbury v. State,322 N.W.2d 281, 287 (Iowa 1982)). The doctrine of adverse possession is strictly construed because the law presumes possession is under regular title. C.H. Moore TrustEstate, 423 N.W.2d at 15 (citing Carpenter v.Ruperto, 315 N.W.2d 782, 784 (Iowa 1982)). The burden is on the plaintiff to show all the elements of adverse possession by clear and positive proof. Id. The district court determined that Clymer failed to establish a claim of right or color of title to the disputed parcel. See Council BluffsSav. Bank v. Simmons, 243 N.W.2d 634, 636 (Iowa 1976) (stating a plaintiff must establish either a claim of right or a color of title). Clymer relies solely on a claim of right.
A claim of right is evidenced by a plaintiff taking and maintaining property, such as an owner of that type of property would, to the exclusion of the true owner; in other words, the plaintiff's conduct must clearly indicate ownership. I-80Assocs., Inc. v. Chicago, Rock Island, Pacific R.R.Co., 224 N.W.2d 8, 11 (Iowa 1974). Acts of ownership include occupying, maintaining, and improving land. Lynch v.Lynch, 239 Iowa 1245, 1255, 34 N.W.2d 485, 490-91 (1948). However, a claim of right must be asserted in good faith.Carpenter, 315 N.W.2d at 786. Good faith cannot be established when the person knows he does not have title and knows there is no basis for claiming an interest in the property. Mitchell v. Daniels, 509 N.W.2d 497, 500
(Iowa Ct.App. 1993) (citing Creel v. Hammans,234 Iowa 532, 535, 13 N.W.2d 305, 307 (1944)). A plaintiff's knowledge of lack of title is not determinative on its own. SeeCreel, 234 Iowa at 535, 13 N.W.2d at 307 ("The doctrine of adverse possession presupposes a defective title. . . . If the statute were to run only in favor of a valid title, it would serve no purpose."). However, when a plaintiff knows he does not have a valid title, he must have a basis for claiming an interest in the property. See Carpenter,315 N.W.2d at 786 (indicating a good faith claim of right may be satisfied by confusion or mistake); Mitchell, 509 N.W.2d at 500 n. 3 (stating when the plaintiff knows he lacks title to land, "[a]n oral agreement is a sufficient basis for a claim of right of an adverse possessor" (citing Burch v.Wickliff, 209 Iowa 582, 588, 227 N.W. 133, 135 (1929)). The requirement of good faith claim of right prevents mere squatters, who know they do not have title to land and know there is no basis to claim an interest in the land, from benefiting from adverse possession. Carpenter,315 N.W.2d at 786.
We agree with the district court that Clymer failed to establish the required good faith claim of right. Clymer's conduct clearly indicated ownership but her claim to the land was, as the district court stated, that of a "squatter." When the Clymers first entered the disputed property in the late 1950s, they both knew they did not have legal title or a basis on which to claim legal title to the property. See,e.g., Carpenter, 315 N.W.2d at 786 (finding the plaintiff did not act in good faith because she entered into possession of the land knowing she had no legal right to do so);Goulding v. Shonquist, 159 Iowa 647, 141 N.W.2d 24
(1913) (finding the plaintiff did not act in good faith because he entered into possession of the land knowing he had no legal right to do so, even though he thought it was wasteland not owned by anyone). Over the years the knowledge that the Clymers did not have legal title or a basis to claim legal title was evidenced by the Clymers' search for the legal titleholder so that they could pursue purchasing the disputed property.
Clymer now asserts that although she knew she did not have legal title to the disputed property, her claim of right was in good faith because she diligently searched for, but could not find, the legal titleholder, coupled with the fact that she believed adverse possession and the affidavit of possession would give her legal rights to the property. This argument fails for several reasons. First, Clymer did identify the last known owner of the disputed property as Hutsonpiller, but the record did not include any efforts to identify Hutsonpiller's heirs or successors in interest. As the district court found, "Clearly, [Clymer] did not name or notice any party in this action besides Shawd, whether known or unknown." Moreover, a "good faith claim of right" as required under a claim of adverse possession, is examined at the time one enters into possession of the disputed property. Because the Clymers knew they had no right to the disputed property when they first began caring for it, Violet could not now prove the "good faith claim of right" in order to establish title through adverse possession.See 3 Am. Jur. 2d Adverse Possession §§ 112 (2002) (good faith is determined at the time of entry and possession); see, e.g., Carpenter,315 N.W.2d at 786 (stating that the plaintiff did not establish good faith because at the time she entered into possession she knew she had no legal claim to the land); Abel v. Abel,245 Iowa 907, 920, 65 N.W.2d 68, 75 (1954) (examining whether the plaintiffs established good faith at the time they exchanged quitclaim deeds).
Furthermore, Clymer's belief that she obtained title through adverse possession and the Clymers' attempt to clear title by filing an affidavit of possession does not provide the legal basis necessary to establish a good faith claim of right.See Carpenter, 315 N.W.2d at 786 (discussing that a claim of right cannot be acquired by "merely entering possession"). A belief one has obtained title through adverse possession cannot satisfy the good faith requirement.See Am. Jur 2d Adverse Possession §§ 113 (2002) (discussing the good faith requirement). This would render the good faith requirement useless because a squatter could always argue they had a good faith belief they obtained the land through adverse possession. See Carpenter,315 N.W.2d at 785 (discussing the purpose of a claim of right is to bar squatters). Also, Clymer testified that she believed the affidavit of possession was filed to "hopefully give us . . . adverse possession." Even if the affidavit of possession included the disputed property in the legal description, this would not have given the Clymers record title. Under Iowa Code section 614.17A, an affidavit of possession may be filed, which will bar other claims to the property, but the affidavit of possession must be filed by the record titleholder who is in actual possession of the property. Iowa Code §§ 614.17
(2007); see Garrett, 684 N.W.2d at 254-55 (stating that under section 614.17 a person must hold record title for more than ten years in order for an affidavit of possession to extinguish other claims). Although the Clymers clearly tended the disputed property for decades, we agree with the district court that Clymer did not satisfy the good faith claim of right required under adverse possession.
Clymer next asserts that the district court erred by not "cancelling" or "rescinding" Shawd's quitclaim deed, regardless of whether the district court dismissed the quiet title petition. The district court can only grant relief consistent with the pleadings and evidence and such as will not surprise the opposing party. Alcorn v. Linkem, 257 Iowa 630,638, 133 N.W.2d 89, 94 (1965). The relief Clymer requested in her petition was that title be quieted in her and that Shawd "be barred and forever stopped" from claiming a right or title to the disputed property. Clymer first requested the court to declare Shawd's quitclaim deed "null and void" in her motion to enlarge and reconsider. The district court's final ruling declined to grant Clymer's request to bar and forever stop Shawd from claiming an interest in the land. The district court reasoned that granting this request would prevent Shawd from ever claiming an interest in the disputed property, even an interest that may arise in the future that is not based upon the quitclaim deed. Additionally, Shawd's quitclaim deed includes more land than just the disputed property. As declaring Shawd's quitclaim deed "null and void" would go beyond the relief Clymer requested in her petition, we affirm the district court's denial of this request.
Motion for Sanctions.
Clymer also appeals the denial of her motion for sanctions pursuant to Iowa R. Civ. P. 1.413(1). We review a district court's denial of sanctions for abuse of discretion. Harrisv. Iowa Dist. Ct., 570 N.W.2d 772, 776 (Iowa Ct.App. 1997) (citing Schettler v. Iowa Dist. Ct., 509 N.W.2d 459,464 (Iowa 1993)). Sanctions are "mandatory once a violation occurs, but whether a violation has occurred is a matter for the court to determine, and this involves matters of judgment and degree." Mathias v. Glandon, 448 N.W.2d 443, 446 (Iowa 1989). From our review of this record, we conclude that the district court did not abuse its discretion by declining to impose sanctions for the reasons stated by the district court. We therefore affirm the denial of sanctions.
AFFIRMED.
[1] CMC is the ultimate successor in interest to the Chicago, Milwaukee, St. Paul and Pacific Railroad Company.